**In re the MATTER OF THE ANNEXATION PROPOSED BY ORDINANCE NO. X–01–95 Being an Ordinance to Annex Certain Territory to the City of Fort Wayne and to Include Same in Councilmanic District Number 1 (Moeller Road Annexation).**

No. 02A03–0111–CV–375.

Court of Appeals of Indiana.

July 10, 2002.

James P. Fenton, Alan L. Verplanck, Eilbacher Scott, P.C. Fort Wayne, IN, Attorneys for Appellants, Remonstrators.

J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner Fort Wayne, IN, Attorney for Appellee City of Fort Wayne.

## OPINION

BAKER, Judge.

Appellants–Plaintiffs–Remonstrators (the Remonstrators)[1] appeal the trial court's order granting summary judgment in favor of appellee-defendant the City of Fort Wayne (Fort Wayne) and denying their cross-motion for summary judgment. Finding that: (1) the trial court properly granted Fort Wayne's motion for summary judgment on the basis of the admissible portions of the designated affidavits and the city's fiscal plan; (2) any confusion over assignment of the annexation area to a particular councilmanic district was not grounds for invalidating the ordinance; (3) claims regarding defective notice and Fort Wayne's failure to include a cost estimate of its indebtedness in its fiscal plan are based on non-compliance with statutes that do not deal specifically with remonstrances and, therefore, are not subject to judicial review; and (4) Fort Wayne was not required to address the specific delivery of services to the split parcels in its fiscal plan, we affirm.

## FACTS

The undisputed facts are that on January 10, 1995, the Fort Wayne City Council passed Annexation Ordinance No. X–01–95 (the Ordinance) and approved a fiscal Plan (the Fiscal Plan) for annexation as required by Indiana Code section 36–4–3–13(d). The Mayor of Fort Wayne signed the Ordinance into law on January 13, 1995. The annexation area, known as the Moeller Road Annexation, consists of approximately 371 acres of land with a population of twenty-three people.

Notice of Fort Wayne's adoption of the Ordinance was published in the Fort Wayne News–Sentinel and the Fort Wayne Journal–Gazette on January 18, 1995, and January 25, 1995. The notice published in the Journal–Gazette on January 18, 1995, was spread over two columns, but was interrupted at the bottom of the first column by an unrelated public auction notice. Appellants' App. p. 187. As a result, the annexation notice was bifurcated by the public auction notice between Sections 3 and 4 of the Ordinance. Appellants' App. p. 187.

Indiana Code section 36–4–3–4(f) (now codified at § 36–4–3–4(g)) requires the annexing city to assign the annexation area to a councilmanic district. The Fiscal Plan and the title of the Ordinance both state that the annexation area will be assigned to Councilmanic District No. 1, which is contiguous to the annexation area. Appellants' App. p. 16, 42. However, Section 4 of the Ordinance states that the annexation area will be assigned to Councilmanic District No. 4. Councilmanic District 4 is not contiguous to the annexation area.

After annexation, Fort Wayne will become liable for a pro rata share of the outstanding debt of Adams Township. App. p. 205–06. Fort Wayne's Fiscal Plan

---

1. The Remonstrators are comprised of a majority of the owners of real estate in the annexation area, some of whom also own property within the present boundaries of Fort Wayne. Appellants' App. p. 11,14

does not include any estimate for its share of this indebtedness.

The boundaries of the annexation area bisect certain property lines, and Fort Wayne's Fiscal Plan does not specifically address its service responsibilities to the divided tracts. However, in 1999, during the pendency of this litigation, the portions of the split parcels outside the annexation area became part of Fort Wayne as the result of another annexation.

On March 21, 1995, the Remonstrators filed a statutory remonstrance challenging the legality of the annexation and also sought declaratory relief. Specifically, the Remonstrators asserted that Fort Wayne had not satisfied the statutory conditions for annexation. On August 31, 1995, Fort Wayne filed a motion for summary judgment, asserting, among other things, that it was entitled to judgment in its favor because the proposed annexation satisfied all statutory requirements. Fort Wayne designated the affidavits of several municipal service providers together with a detailed Fiscal Plan in support of its motion.

In response, on October 31, 1995, the Remonstrators filed a motion to strike the designated affidavits because they allegedly contained conclusory testimony. The remonstrators also filed a cross-motion for summary judgment. In their motion, the Remonstrators argued that disputed issues of fact existed regarding the legality of the annexation that precluded summary judgment in Fort Wayne's favor. Specifically, the Remonstrators' alleged that the ordinance was invalid because, among other things: (1) the annexation notice was ineffective and confusing; (2) the annexation area was assigned to an illegal councilmanic district; (3) the Fiscal Plan failed to include a cost estimate for Fort Wayne's share of Adams Township's indebtedness; and (4) the Fiscal Plan did not address Fort Wayne's service responsibilities to

property bisected by the annexation area's boundary lines. In addition, the Remonstrators claimed that they were entitled to summary judgment because the common boundary of the legislative districts created by the annexation ordinance unlawfully crossed precinct and census block lines. Appellants' App. p. 103–04.

The trial court held a hearing on the parties' motions on May 9, 1996. Thereafter, on June 5, 1996, the trial court denied the Remonstrators' motion to strike after concluding that the challenged portions of the affidavit, even if conclusory, are merely "cumulative of the designated [Fiscal P]lan." Appellants' App. p. 219. The trial court also granted the parties' motions for summary judgment in part and denied them in part. Specifically, the trial court determined that: (1) a reasonable person could have understood the challenged notice of annexation; (2) although the Fiscal Plan assigned the annexation area to one illegitimate councilmanic district, the logical alternative interpretation was that the area was properly assigned to the other legitimate councilmanic district mentioned in the plan; and (3) there is no statutory requirement that the Fiscal Plan mention any specific sum of indebtedness to Adams Township. The trial court also ruled that because questions remained regarding Fort Wayne's service obligations to the divided tracts and any impact this may have on a separate annexation claim by New Haven, summary judgment was inappropriate and further proceedings were required. Finally, the trial court determined that "no patent boundary illegality exists." Appellants' App. p. 221.

On August 23, 2001, Fort Wayne filed its second motion for summary judgment. In its motion, Fort Wayne asserted that there would no longer be any divided tracts should the proposed annexation take place because those tracts had merged into Fort

Wayne as the result of another annexation that came into effect in 1999. Fort Wayne also asserted that it had met the statutory requirements for annexation. On September 27, 2001, the Remonstrators filed a renewed cross-motion for summary judgment and a renewed motion to strike, incorporating their previous summary judgment filing. On October 16, 2001, the trial court granted summary judgment in favor of Fort Wayne and denied the Remonstrators' cross-motion for summary judgment. In so doing, the trial court affirmed its prior findings and conclusions of law dated June 5, 1996. It also found that all issues regarding service delivery to the split parcels had abated as a result of the 1999 annexation merging the parcels into Fort Wayne. The Remonstrators now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

Annexation remonstrances "may be subject to summary judgment motions." *Deaton v. City of Greenwood*, 582 N.E.2d 882, 884 (Ind.Ct.App.1991). Summary judgment is only appropriate where the ' "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 915 (Ind.Ct.App.2001) (quoting Ind. Trial Rule 56(C)). "Once the moving party sustains its initial burden, the opposing party may not rest upon the pleadings, but must identify the genuine issues and designate any pleadings, depositions, answers to interrogatories, admissions and any other evidentiary matters on which it relies to preclude entry of summary judgment." *Id.*

On appeal, "we will not weigh the evidence, but will consider the facts in the light most favorable to the nonmoving party and may sustain the judgment upon any theory supported by the designated evidence." *Id.* "The fact that the parties [made] cross-motions for summary judgment does not alter our standard for review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Metal Working Lubricants Co. v. Indianapolis Water Co.*, 746 N.E.2d 352, 355 (Ind.Ct.App.2001).

### II. The Remonstrators' Claims

The Remonstrators contend that the trial court erred in granting summary judgment in favor of Fort Wayne and in denying their cross-motion for summary judgment. Specifically, the Remonstrators assert that the trial court erred in: (1) relying on affidavits of municipal service providers containing inadmissible conclusions of law in granting Fort Wayne's motion for summary judgment; (2) determining that the annexation notice was legally sufficient; (3) determining that any confusion over assignment of the annexation area to a particular councilmanic district was not grounds for invalidating the ordinance; (4) determining that Fort Wayne was not required to include any specific sum of indebtedness to Adams Township in its Fiscal Plan; and (5) concluding that Fort Wayne's failure to address service delivery to the split parcels had been cured by the City's subsequent annexation of adjoining property.

### A. Scope of Review

Before addressing the Remonstrators contentions, we note that the municipality bears the burden of showing compliance with the requirements of the annexation statute. *Rogers v. Mun. City of Elkhart*, 688 N.E.2d 1238, 1239–40 (Ind. 1997). The statutory directives governing municipal annexation and disannexation

are found in Indiana Code sections 36–4–3–1 through 22. Sections 11 through 13 establish specific requirements for remonstrances. Section 12 gives trial court's authority to hear and enter judgment on remonstrances. Section 13 directs courts to order annexation provided that the city meets certain specified requirements and has adopted a fiscal plan showing that it will provide municipal services to the annexed area that are equivalent to those provided to similar areas of the municipality.

■ The scope of our review of remonstration issues is guided by our supreme court's recent opinions in *Bradley v. City of New Castle*, 764 N.E.2d 212 (Ind.2002), and *City of Fort Wayne v. Certain Southwest Annexation Area Landowners*, 764 N.E.2d 221 (Ind.2002). In these unanimous companion cases, our supreme court interpreted Indiana's annexation statutes to provide limited judicial review of municipalities' annexation decisions. *Bradley*, 764 N.E.2d at 215–218; *Southwest Landowners*, 764 N.E.2d at 224–26. Our supreme court emphasized that "[a]nnexation is essentially a legislative function" subject to judicial review only as provided by statute, and that "[t]he larger object of the annexation statute is . . . to permit annexation of adjacent urban territory." *Bradley*, 764 N.E.2d at 215 (citing *Rogers*, 688 N.E.2d at 1239). The court found that the only judicial review of annexation provided by statute is found in Indiana Code sections 36–4–3–11 through 13. *Id.* at 217–18. Accordingly, our supreme court determined that judicial review of annexation should not extend beyond the confines of Sections 11 through 13 dealing with remonstrances. *Id.* at 217. The court rec-

ognized exceptions to this rule where "plausible claims of fraud or discrimination are established" or where the annexing municipality commits procedural wrongs so severe that remonstrators' substantial rights are violated. *Id.* at 217–18. Thus, in the absence of such exceptions, remonstrators may not challenge the annexation based on non-compliance with statutes that do not deal specifically with remonstrances.

Further, our supreme court determined that, so long as a city satisfies Section 13's listed requirements, a court shall order the proposed annexation to take place. *Id.* at 217. In *Fort Wayne v. Certain Southwest Annexation Area Landowners*, our supreme court specifically addressed the extent of judicial review of the fiscal plan required by Section 13. 764 N.E.2d at 224–25. The court concluded: "a trial court should not 'audit' a challenged fiscal plan. Rather, it should focus on whether the plan represents a credible commitment by the municipality to provide the annexed area with equivalent capital and non-capital services." *Id.* at 224.

The Remonstrators contend that *Bradley* does not preclude judicial review of their claims of noncompliance with annexation statutes outside of Sections 11 through 13. Specifically, the Remonstrators claim that *Bradley* is inapplicable to the case at bar because *Bradley* only involved an appeal from a remonstrance action, whereas the Remonstrators here are also appealing from the trial court's ruling denying them declaratory relief.[2] According to the Remonstrators, "nothing in Bradley forecloses a declaratory judg-

---

2. The remonstrators in *Bradley* also sought declaratory relief. However, they did not appeal from the ruling adverse to their declaratory judgment action. *See Bradley*, 764 N.E.2d at 214 n. 1. The remonstrators in

*Southwest Landowners* filed a remonstrance action only, and our supreme court reviewed the trial court's grant of summary judgment in the remonstrators favor. *See Southwest Landowners*, 764 N.E.2d at 223–24.

ment action challenging" noncompliance with non-remonstrance annexation statutes. Appellants' Reply Br. p. 14.

However, in *Bradley,* our supreme court made very clear that absent fraud, discrimination, or impairment of the remonstrator's substantive rights, judicial review shall not extend beyond the confines of Sections 11 through 13. 764 N.E.2d at 217–18. Determination of whether the Remonstrators are entitled to declaratory relief would necessarily entail the very review that our supreme court has expressly prohibited. We will not disregard our supreme court's clear directive. Thus, we reject the Remonstrator's claim that the scope of review set forth in Bradley is inapplicable in this instance.

### B. Affidavit Testimony

The Remonstrators first contend that the trial court erred in granting Fort Wayne's motion for summary judgment on the adequacy of its Fiscal Plan. Fort Wayne designated the affidavits of nine municipal service providers[3] together with a detailed Fiscal Plan in support of its motion. The Remonstrators assert that the trial court improperly relied upon the designated affidavits in determining that the municipality's Fiscal Plan satisfied the statutory requirements for annexation set forth in Indiana Code section 36–4–3–13.

As previously mentioned, Section 13(d) requires as a condition of annexation, that the municipality establish a written fiscal plan and a definite policy by which it will provide services to the annexation area "equivalent in standard and scope" to services existing in the City, including cost estimates for providing those services. Fort Wayne attempted to carry its burden

as to these statutory requirements by designating its Fiscal Plan and the affidavits of the municipal service providers who testified as to the proposed provision of various capital and non-capital services to the annexation area.

The third paragraph of each of the challenged affidavits contains a statement by the affiant that he or she is familiar with a particular service (such as police, fire, utilities, etc.) that is being provided within the corporate boundaries of the Fort Wayne and to the comparable area. The fourth paragraph of each affidavit then contains a statement that the affiant is familiar with how that particular service is "proposed to be provided" to the annexation area. Appellants' App. p. 79, 81, 83, 85, 87, 89, 91, 93. The fifth paragraph of the affidavits then states that the services to be provided to the annexation area are "equivalent in standard and scope" to those services provided to the comparable area. Appellants' App. p. 79, 81, 83, 85, 87, 89, 91, 93. Finally, the sixth paragraph contains the statement that there are no services of that particular kind currently being provided to the comparable area "that are not being proposed to be provided" to the annexation area. *See* Appellants' App. p. p. 79–80, 82, 84, 86, 88, 90, 91–92, 94.

■ According to the Remonstrators, the language in the fifth paragraphs of the designated affidavits, stating that the proposed services "are equivalent in standard and scope" to those provided in a comparable area of the City, mirrors the language in Section 13(d) and amounts to an inadmissible legal conclusion. They also assert that the language in paragraph six is con-

---

3. Those service providers include Fort Wayne's City Planner, Chief of Police, Fire Chief, Solid Waste Manager, Traffic Engineer, Street Commissioner, Director of Parks and Recreation, Director of Utilities, and Director of Animal Control. *See* Appellants' App. p. 79, 81, 83, 85, 87, 89, 91, 93

clusory and inadmissible.[4] As such, they contend that the trial court improperly relied upon this affidavit testimony and that it should have been stricken or disregarded.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Steuben County v. Family Dev. Ltd.,* 753 N.E.2d 693, 696 (Ind.Ct. App.2001), *trans. denied.* An abuse of discretion exists only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Affidavits submitted in summary judgment proceedings are governed by Ind. Trial Rule 56(E), which provides, in relevant part, that "supporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth facts as would be admissible in evidence." *Id.* at 696–97. "An affidavit may not contain conclusions of law, and portions of an affidavit that do so will not be considered in ruling on a motion for summary judgment." *Duncan v. Duncan,* 764 N.E.2d 763, 766 (Ind.Ct.App.2002).

The challenged language in paragraph 5 of each of the affidavits amounts to an inadmissible conclusion of law and should have been stricken. However, paragraph six of the affidavits, which establishes that there are no services being offered to the comparable area that are not also proposed to be offered to the annexation area, is admissible. Specifically, the challenged statement in the paragraph six of the affidavits contains the affiants' assertions regarding the equivalency of services to the comparable area and annexation area based on personal knowledge of that particular kind of service and of the service provisions to both these areas. *See Anderson v. Yorktown Classroom Teachers Ass'n,* 677 N.E.2d 540, 543 (Ind.Ct.App.1997) (rejecting a challenge to an affidavit on the basis that it was conclusory as to which services were being provided to the NEA, where the affidavit set forth assertions based on the affiant's personal knowledge of NEA operations and upon his preparation of a financial report detailing the amount of money spent on the provision of those services). Thus, we turn to whether the admissible portions of the affidavits together with the Fiscal Plan are sufficient to support the trial court's grant of summary judgment to Fort Wayne.[5]

Our supreme court addressed the sufficiency of fiscal plans in *City of Fort Wayne v. Certain Southwest Annexation Area Landowners,* 764 N.E.2d at 224–30. According to our supreme court, "courts reviewing annexation challenges should focus on whether the municipality made credible and enforceable commitments to provide equivalent services to similar areas" in its fiscal plan. *Id.* at 224. Further, our supreme court admonished that "[c]ourts are not authorized to dissect the minutiae of what are essentially legislative decisions." *Id.* at 229.

Here, Fort Wayne's Fiscal plan gives a detailed account of the capital and non-capital services to be provided to the annexation area, including fire and police protection, waste disposal, traffic control and street lighting, street maintenance, parks and recreation, utility, animal control, and emergency medical services. Appellants' App. p. 47–53. The Fiscal Plan

---

4. The affidavit of Pam Holocher, pertaining to emergency medical services, contains the same challenged language in paragraph 13, rather than paragraphs 5 and 6, of her affidavit. Appellants' App. p. 77.

5. We note that the Remonstrators did not object to the trial court's consideration of the Fiscal Plan in ruling on Fort Wayne's motion for summary judgment.

also identifies a comparable area, known as the Summit Industrial Park Area, with similar topography, patterns of land use and population density as the annexation area. Appellants' App. p. 42–43. The Fiscal Plan also makes an express commitment to deliver capital and non-capital services to the annexation area equivalent to those provided in the comparable area. Appellants' App. p. 43–47.

■■■■ The Fiscal Plan and admissible portions of the affidavits before the trial court establish that Fort Wayne has made enforceable commitments to provide all major City services to the annexation area on an equivalent basis as required by Section 13. Thus, Fort Wayne carried its burden of proving that there were no genuine issues of fact and that it was entitled to summary judgment on the equivalency requirements set forth in Section 13. Where "the City satisfies Section 13's listed requirements, the court shall order annexation." *Bradley,* 764 N.E.2d at 217. Thus, the trial court did not err in granting summary judgment in favor of Fort Wayne.[6]

### C. Notice

■■■ The Remonstrators also contend that the annexation should be invalidated because one of the newspaper publications giving notice of Fort Wayne's adoption of the Ordinance was "inherently confusing and potentially misleading." Appellants' Br. p. 15. The notice was placed in two different newspapers on two separate dates. In one of the newspapers on one of the publication dates the notice was bifurcated by an unrelated legal notice between Sections 3 and 4 of the Ordinance. Appellants' App. p. 187.

According to Indiana Code section 36-4-3-7(a), when an annexation ordinance is adopted "it must be published in the manner prescribed by I.C. 5-3-1." Indiana Code section 5-3-1-2.3 governs the validity of notice containing errors or omissions, and provides that "[a] notice published in accordance with this chapter is valid even though [it] contains errors or omissions, as long as . . . a reasonable person would not be misled" thereby. In this instance, the trial court determined that a reasonable person would not have been misled by the challenged notice publication. Appellants' App. p. 219. Accordingly, the trial court concluded that the alleged deficiency in the notice did not render the Ordinance invalid. Appellants' App. p. 219.

As *Bradley* makes clear, judicial review of annexation does not extend beyond the confines of Indiana Code sections 36-4-3-11 through 13 unless the Remonstrators' substantial rights were impaired as result of the alleged error. *See Bradley,* 764 N.E.2d at 217–18. In this instance, we discern no impairment of the Remonstrators' substantial rights, as only one out of the four notice publications was allegedly misleading, and the remonstrance was timely filed. Thus, the Remonstrators' claim regarding the single alleged misleading publication falls outside the scope of judicial review of annexations.

---

6. We note that in their reply brief, the Remonstrators assert for the first time that the trial court erred in not scheduling an evidentiary hearing as provided for by Section 11 of the annexation statute. Appellants' Reply Br. p. 4–6. Our review of the record indicates that the Remonstrators never raised this issue to the trial court or requested such a hearing. A party may not take advantage of errors that it commits, invites, or which are the natural consequence of its own neglect or misconduct. *Chem. Waste Mgmt. of Ind. v. City of New Haven,* 755 N.E.2d 624, 632 n. 4 (Ind.Ct. App.2001). Invited error is not subject to review by this court. *Id.* Thus, the Remonstrators have waived this issue for appellate review.

*D. Assignment to Councilmanic District*

The Remonstrators also contend that the trial court should have invalidated the Ordinance because the annexation area was assigned to an illegal councilmanic district. The annexation statute requires the annexing municipality to assign the annexation area to an existing and contiguous councilmanic district. *See* I.C. § 36-4-3-4(f) (now codified at I.C. § 36-4-3-4(g)); I.C. § 36-4-6-3(b)(1). Here, the Fiscal Plan and the title of the Ordinance both state that the annexation area will be assigned to Councilmanic District No. 1, which is contiguous to the annexation area. Appellants' App. p. 16, 42. However, Section 4 of the Ordinance states that the annexation area will be assigned to Councilmanic District No. 4. Appellants' App. p. 18. Councilmanic District No. 4 is not contiguous to the annexation area. The Remonstrators assert that because Section 4 of the Ordinance improperly assigns the annexation area to a non-contiguous councilmanic district, that section is invalid and renders the entire annexation void.

Because the Remonstrators' claim regarding the illegality of the councilmanic district is based on a statutory requirement outside of Sections 11 through 13, it is not reviewable according to *Bradley,* 764 N.E.2d at 217. Nevertheless, the Remonstrators seek to avoid this result by relying on *City of Muncie v. Lowe,* 705 N.E.2d 528, 533 (Ind.Ct.App.1999), a case decided three years before *Bradley,* for the proposition that "failure to make the councilmanic assignment [is] viewed, in effect, as a violation of substantial rights." Appellants' Reply Br. p. 8.

In *Lowe,* the City of Muncie failed to assign the annexed territory to any councilmanic district. 705 N.E.2d at 530. We determined that the municipality's failure to make any assignment whatsoever was fatal to its annexation effort. *Id.* at 532–

33. In reaching this conclusion, we rejected the City of Muncie's claim that it was not required to prove its compliance with Indiana Code section 36-4-3-4(f) in order for the annexation to go ahead because such compliance is not one of the conditions for annexation set forth in Section 13. *Id.* at 531–33. We also declined to apply the rule set forth in *Woerner v. City of Indianapolis,* 242 Ind. 253, 263–64, 177 N.E.2d 34, 38 (1961), to remedy the alleged error. *Id.* at 532, 177 N.E.2d 34. That rule permits courts to correct minor omissions or make minor substitutions in acts or ordinances where:

(1) such action is necessary to give vitality to or prevent absolute absurdities in the acts of the legislature; (2) an omission has occurred or a correction is necessary because of a clerical or typographical error; (3) the legislation, as enacted, was obviously not within the comprehension of the legislative body; and (4) the legislative intention, with respect to the enactment, is clear.

*Id.* We determined that this rule did not apply because the City of Muncie's total failure to assign the annexed territory to a councilmanic district could not reasonably be ascribed to a clerical or typographical error and the omission may well have been intended by the City. *Id.*

The case at bar is readily distinguishable from *Lowe* inasmuch as this is not a situation where the annexing city totally failed to assign the annexation area to a councilmanic district. Rather, the problem arises because the assignment to contiguous Councilmanic District 1 in the Fiscal Plan and title of the Ordinance conflicts with the assignment to non-contiguous Councilmanic District 4 in Section 4 of the Ordinance. This contradiction is unlikely to have been intended by the municipality and is conceivably due to a clerical or typographical error that a court may fix

according to *Woerner.* Thus, even if the Remonstrators' substantive rights were to any degree impaired by the error, such error may be remedied and is not grounds to invalidate the ordinance.[7]

### E. Indebtedness

██ The Remonstrators next contend that the trial court should have invalidated the Ordinance because Fort Wayne failed to include in its Fiscal Plan an estimate of certain indebtedness the city would incur as a result of the annexation. Specifically, according to Indiana Code section 36–4–3–10(a),[8] after annexation, Fort Wayne becomes liable for a pro rata share of the outstanding debt of Adams Township. Appellants' App. p. 205. It is undisputed that this outstanding debt is substantial and that Fort Wayne's Fiscal Plan does not include any estimate for its share of this indebtedness. According to the Remonstrators, Fort Wayne's failure to address this indebtedness renders its Fiscal Plan legally inadequate or, at the very least, raises a genuine issue of material fact as to the plan's adequacy.

The Remonstrators do not allege that omission of the township indebtedness information from the Fiscal Plan impaired their substantial rights or caused them specific harm. Instead, they assert that Section 13 requires Fort Wayne to estimate its potential indebtedness in its Fiscal Plan. At the time that the Ordinance was adopted, Section 13 did not include a specific requirement that the city must estimate its potential indebtedness under Indiana Code section 36–4–3–10(a) in its Fiscal Plan. Nonetheless, the Remonstrators argue that such requirement may be inferred from Section 13(d)(2)'s condition that the fiscal plan show the city's "method or methods of financing the planned services." Appellants' Reply Br. p. 15. More specifically, the Remonstrators maintain that Section 13(d)(2) requires that such indebtedness be accounted for in connection with financing the annexation.

We note that the interpretation of a statute is a question of law reserved for the courts. *Spears v. Brennan,* 745 N.E.2d 862, 869 (Ind.Ct.App.2001). The court's objective when construing the meaning of a statute is to ascertain and give effect to the legislative intent expressed in the statute. *Turner v. Bd. of Aviation Comm'rs,* 743 N.E.2d 1153, 1161 (Ind.Ct.App.2001), *trans. denied.* Where a statute has not previously been construed, the express language of the statute and the rules of statutory construction control the interpretation. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Spears,* 745 N.E.2d at 869. Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *State Bd. of Accounts v. Ind. Univ. Found.,* 647 N.E.2d 342, 348 (Ind.Ct.App.1995), *trans. denied.*

Here, the Remonstrators' claim necessarily rests on the meaning of the terms "method" and "financing." "Method" is defined as "[a] means or manner of proce-

---

7. We note that it is undisputed that the annexation area is contiguous to the municipality as required by Section 13.

8. Indiana Code section 36–4–3–10(a) provides:

> If the township from which a municipality annexes territory is indebted or has outstanding unpaid bonds or other obligations at the time of the annexation, the municipality is liable for and shall pay that indebtedness in the same ratio as the assessed valuation of the property in the annexed territory bears to the assessed valuation of all property in the township....

dure." *The American Heritage Dictionary* 1105 (4th ed.2000). "Financing" is defined as "to provide or raise funds or capital." *Id.* at 660. Thus, Section 13(d)(2) establishes that the city must show the manner or means by which it will fund the annexation in its Fiscal Plan, but does not require that the City estimate the amount or source of any potential indebtedness resulting from the annexation. Moreover, Section 13(D)(2) relates to the "method or methods of financing *the planned services.*" (Emphasis supplied). The mandatory assumption of township indebtedness is not a "service." Because Section 13 does not require that the Fiscal Plan contain a cost estimate of the City's indebtedness under Indiana Code section 36–4–3–10(a), any failure to do so is beyond the scope of judicial review. *See Bradley,* 764 N.E.2d at 217–18.

## F. Service Delivery

■ Finally, the Remonstrators contend that the trial court improperly determined that alleged defects in the annexation due to Fort Wayne's failure to address the delivery of services to property bisected by the annexation was cured by the subsequent annexation of adjoining property. At the time that the Ordinance was adopted, the annexation boundaries bisected certain property. The Fiscal Plan did not specifically address Fort Wayne's service responsibilities to the divided tracts. On June 5, 1996, the trial court ruled that because questions remained regarding Fort Wayne's service obligations to the divided tracts, summary judgment was inappropriate and further proceedings were required. However, in its later ruling on October 16, 2001, the trial court concluded that this issue had abated by the

merging of the split parcels into Fort Wayne as the result of a separate annexation that came into effect in 1999. According to the Remonstrators, the trial court's finding is contrary to Section 13(d), which provides that the city must develop a written fiscal plan and establish a definite policy "as of the date of passage of the annexation ordinance." Thus, they assert that the Ordinance may not be legitimized by the subsequent annexation of adjoining property.

In addressing this issue, we are mindful of our supreme court's admonishment that courts should not micromanage annexation. *See Bradley,* 764 N.E.2d at 216; *Southwest Landowners,* 764 N.E.2d at 224. Rather, we are directed that "if the [annexing muncipality] satisfies section 13's listed requirements, the court shall order annexation." *Id.* at 217.

Section 13 requires that the Fiscal Plan address the municipality's planned provision of capital and non-capital services to the annexation area. I.C. § 36–4–3–13(d). It does not impose a requirement that the annexing municipality must address the provision of services to property outside of the annexation area, even property bisected by the annexation.[9] *See* I.C. § 36–4–3–13(d). Fort Wayne's Fiscal Plan does address the planned capital and non-capital services to the area to be annexed, which presumably includes those portions of the split parcels inside the annexation boundaries. Appellants' App. p. 47–53. The Remonstrators' assertion that this court should address its concerns over the specific delivery of service to the split parcels is an invitation for us to micromanage the annexation, a practice that our supreme court disapproved of in *Bradley* and *Southwest Landowners.* This we will not do. Accordingly, we find no error.

9. We note that Indiana's annexation law does not forbid the division of tracts of land during

the course of an annexation. *See* I.C. §§ 36–4–3–1 through 22.

## CONCLUSION

In conclusion, we find that: (1) the trial court properly granted Fort Wayne's motion for summary judgment; (2) any confusion over assignment of the annexation area to a particular councilmanic district was not grounds for invalidating the ordinance; (3) claims regarding defective notice and Fort Wayne's failure to include a cost estimate of its indebtedness in its Fiscal Plan are based on non-compliance with statutes that do not deal specifically with remonstrances and, therefore, are not subject to judicial review; and (4) Fort Wayne was not required to address the specific delivery of services to the split parcels in its Fiscal Plan.

Judgment affirmed.

SULLIVAN, J., and DARDEN, J., concur.